IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 25, 2019 at Knoxville

## STATE OF TENNESSEE v. KELVIN DEWAYNE GOLDEN

**Appeal from the Circuit Court for Madison County**
**No. 18-87     Roy B. Morgan, Jr., Judge**

_____

## No. W2018-01477-CCA-R3-CD

_____

A Madison County jury convicted the defendant, Kelvin Dewayne Golden, of aggravated sexual battery, and the trial court imposed a sentence of ten years' confinement. On appeal, the defendant challenges the sufficiency of the evidence to support his conviction and argues the sentence imposed by the trial court was excessive. After reviewing the record and considering the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

George Morton Googe, District Public Defender; Jeremy B. Epperson, Assistant Public Defender, for the appellant, Kelvin DeWayne Golden.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Lee R. Sparks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On August 24, 2016, eleven-year-old L.P.[1] visited the apartment of his cousin, L.B, who was also eleven at the time. Also present in the apartment that day were L.B.'s mother and the defendant, who was dating L.B.'s mother at the time. L.B watched as

_____

[1] It is the policy of this Court to protect the anonymity of victims of sex crimes by identifying them and their relatives by their initials only.

L.P. and the defendant played video games in the living room, while L.B.'s mother slept in her bedroom. At some point during the afternoon, L.B. left the living room to "get something," and the defendant "grabbed [L.P.'s] arm." L.P. thought the defendant "was playing," but the defendant "bent [him] over and started pulling down [his] pants." The defendant then "stuck his thumb in [L.P.'s] butt." L.P. told the defendant to stop and tried to get away. L.B. then came back into the living room, saw the defendant "trying to stick his hand down into [L.P.'s] pants," and pushed the defendant off of L.P.

Afterward, L.P. and L.B. left the apartment and told L.P.'s uncle what had happened. Later that night, L.P. also told his mother, who took him to the Jackson Police Department. Sergeant Jay Stanfill of the Jackson Police Department instructed L.P. and his mother to meet him at Jackson-Madison County General Hospital. However, a medical exam of L.P. was not performed. The Department of Children's Services was also contacted, and Doretha Brice, a Child Protective Services investigator, scheduled a forensic interview of L.P. with Monica Goodman, a forensic interviewer with the Exchange Club Carl Perkins Center.

At trial, the State called L.P., L.B., Sergeant Jay Stanfill, Doretha Brice, and Monica Goodman as witnesses, and all rendered testimony consistent with the foregoing. On cross-examination, L.P. acknowledged he had previously testified that no one took his clothes off during the incident. He also acknowledged the transcript of the previous hearing indicated his brothers were at the apartment with him that day. However, L.P. did not recall "saying [his] [brothers'] names" during his previous testimony. L.B. acknowledged on cross-examination that there were some inconsistencies between her testimony at trial and her statement to police. Although she testified the defendant left the apartment after the assault, her statement to police indicated the defendant was there several hours later.

The defendant called Tico Golden and L.B.'s mother as witnesses. Mr. Golden testified L.P. told him on several occasions that the accusation against the defendant was not true. Although he admitted he never told the defendant about these conversations with L.P., Mr. Golden testified he told Sergeant Stanfill that L.P. had recanted his story. In response to Mr. Golden's testimony, the State called Sergeant Stanfill as a rebuttal witness. Sergeant Stanfill testified he had "never had any contact" with Mr. Golden and was not aware of anyone under his supervision speaking with Mr. Golden about the investigation. He also testified he was not aware of either L.P. or L.B. ever recanting their story.

L.B.'s mother testified L.P. was in her apartment with his brothers on the day in question. As the boys played video games with the defendant, L.B.'s mother sat at the kitchen table and watched them. At some point, she went into her bedroom to speak on

the telephone. However, L.B.'s mother did not hear anyone "yelling or screaming" during this time, so she did not believe the defendant sexually assaulted L.P. On cross-examination, L.B.'s mother admitted she could not be sure that L.P. and the defendant were not alone in the living room at some point that day.

Following deliberations, the jury found the defendant guilty of aggravated sexual battery, a Class B felony, and the trial court imposed a sentence of ten years to be served at 100 percent. The defendant filed a motion for new trial in which he argued the evidence at trial was insufficient to support the jury's verdict and the sentence imposed by the trial court was excessive. The trial court denied the motion, and this timely appeal followed.

*Analysis*

On appeal, the defendant argues the evidence at trial is insufficient to support his conviction of aggravated sexual battery. The defendant also argues the trial court imposed an excessive sentence. The State contends the evidence is sufficient to sustain the defendant's conviction, and the trial court properly sentenced the defendant. We agree with the State.

## I.    Sufficiency

The defendant argues the evidence is insufficient to sustain his conviction. Specifically, he contends L.P. and L.B. did not provide consistent testimony, and the State did not provide physical or forensic evidence to support the victim's claim. The State contends the evidence is sufficient.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the following rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

As charged in this case, aggravated sexual battery is "unlawful sexual contact with a victim by the defendant or the defendant by a victim [where] . . . [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" *Id*. § 39–13–501(6). "Intimate parts" includes "semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" *Id*. at (2).

Viewed in the light most favorable to the State, L.P. testified he was eleven years old at the time of the assault. He and the defendant were playing video games when the defendant grabbed L.P.'s arm, bent him over, and pulled down his pants. The defendant then "stuck his thumb in [L.P.'s] butt." L.B. testified she entered the living room and saw the defendant "trying to stick his hand down into [L.P's] pants." She pushed the defendant off of L.P., and L.B. and L.P. exited the apartment. Based on this testimony, a rational jury could find aggravated sexual battery beyond a reasonable doubt.

Although the defendant argues the State failed to submit physical or forensic evidence to corroborate L.P.'s testimony, the victim's testimony alone is sufficient to support the defendant's conviction. *State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003) (stating a child victim's testimony regarding sexual contact can be sufficient to support a defendant's conviction). Moreover, questions regarding the victim's credibility and the weight and value to be given to his testimony are to be determined by the trier of fact and not this Court. *State v. Bland*, 958 S.W.2d 659, 659 (Tenn. 1997). Through its finding of guilt, the jury accredited the testimony of the victim, and we will not disturb that finding on appeal. *Id*. The defendant is not entitled to relief on this issue.

## II.   Sentencing

The defendant also argues the trial court erred in imposing an excessive sentence. Specifically, the defendant argues he was entitled to an eight-year sentence because the trial court gave weight to one mitigating factor and no enhancement factors were applied. The State contends the trial court exercised proper discretion in determining the length of the defendant's sentence.

In determining an appropriate sentence, a trial court must consider the following factors:  (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation.  Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b).  In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed."  *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only.  *See id*. §§ 40-35-114, -210(c).  Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114."  *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing."  *Id.* § 40-35-210(e).

When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness.  *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).  If a trial court misapplies an enhancement or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination.  *Bise*, 380 S.W.3d at 709.  This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute."  *Id.* at 709-10.  Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).  The party challenging the

sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Here, the defendant was convicted of a Class B felony and faced a sentencing range of eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2). The State did not request any enhancement factors, and none were considered by the trial court. In mitigation, the trial court found the defendant's criminal conduct neither caused nor threatened serious bodily injury. However, the trial court did not "give great weight" to this factor. The trial court also rejected the defendant's youth as a mitigating factor finding the defendant was nineteen years old at the time of the offense "and certainly at a point in his life [he] should know better." The trial court then imposed a sentence of ten years to be served at 100 percent.

Although the defendant contends the proper sentence was eight years, a defendant is not entitled to the minimum sentence within the applicable sentencing range. *See State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Rather, once the trial court determines the sentencing range, it "is free to select any sentence within the applicable range." Tenn. Code Ann. § 40-35-210 (a), (d); *Carter*, 254 S.W.3d at 343. Here, our review of the record indicates the trial court imposed a within range sentence after properly considering the evidence adduced at trial and the sentencing hearing, the presentence report, the principles of sentencing, the parties' arguments, the nature and characteristics of the crime, and evidence of mitigating and enhancement factors. Tenn. Code Ann. §§ 40-35-103(5), -114, -210(b). Therefore, the defendant's sentence is presumed reasonable, and the defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE

- 6 -